**In re Edward Olin HUTCHERSON, Jr., Debtor.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and Robertshaw Controls Company, Plaintiffs,**

v.

**Edward Olin HUTCHERSON, Jr., Defendant.**

**Bankruptcy No. 84–01084–R. Adv. No. 84–0325–R.**

United States Bankruptcy Court, E.D. Virginia Richmond Division.

June 19, 1985.

John A. Conrad, Richmond, Va., for plaintiffs.

Stephen A. Dunnigan, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on the complaint of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and Robertshaw Controls Company ("Robertshaw") seeking a determination of nondischargeability of a debt due by the debtor, Edward Olin Hutcherson, Jr. ("Hutcherson") pursuant to 11 U.S.C. § 523. A pretrial conference was held in this matter on November 7, 1984 at which time the Court requested pretrial briefs on the issues in the case and a trial date was set. Subsequently, the parties informed the Court that they desired that the matter be resolved on the briefs and stipulations of fact submitted and that a trial would be unnecessary. Upon the Court's review of the memoranda of law and stipulations of fact submitted by the parties, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor in this case, Hutcherson, filed a Chapter 7 petition in this Court on July 26, 1984. On Schedule A–3 filed with the debtor's petition, plaintiff, National Union, was listed as an unsecured creditor without priority in the amount of $97,307.71 for "[s]ubrogation or other rights under insurance claim paid to former employer incurred April 12, 1984." The other plaintiff in this proceeding, Robertshaw, the former employer, was not listed by the debtor in his petition.

The debt which the plaintiffs herein seek to have determined nondischargeable arose as a result of the embezzlement of property by Hutcherson as an employee of Robertshaw. Hutcherson admits that while employed as the Chief Accountant at Robertshaw from June 19, 1975 through August 24, 1983, he embezzled $147,307.71 from Robertshaw. Hutcherson further admits that with respect to Robertshaw, the entire amount of $147,307.71 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).[1] Hutcherson denies, however, that the debt is nondischargeable as to plaintiff, National Union. The employer in this case, Robertshaw, held a contract of insurance to protect against losses due to employee embezzlement with plaintiff National Union. The contract of insurance provided for a $50,000 deductible with respect to any losses incurred under the policy. In accordance with the contract, National Union paid Robertshaw $97,307.71 representing the total loss of $147,307.71 less the $50,000 deductible. The contract of insurance between Robertshaw and National Union also contained a provision for subrogation. In § 14 of the contract, Robertshaw and National Union agreed that:

In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Pursuant to these subrogation provisions of the contract and as a result of the embezzlement, National Union required Robertshaw to execute and deliver certain instruments among which is the "Release and Assignment" executed on April 12, 1984 by H.N. Robinson, the Vice President of Robertshaw. The Release and Assignment acknowledges receipt by Robertshaw of payment under the contract of insurance of $97,307.71 and releases National Union from all claims by Robertshaw under the policy of insurance with respect to the embezzlement of property by the debtor, Hutcherson. The instrument also makes an assignment to National Union in the following manner:

[T]o the extent provided in National Union Policy 939–7692 (the Policy) the Insured does also assign, transfer, convey and deliver unto National Union all rights, claims, title and interest which the Insured now has or may hereafter have against Edward O. Hutcherson and others, and pursuant to Section 14 of the Policy does hereby irrevocably constitute and appoint National Union its true and lawful attorney, at its own cost, in its name or in the Insured's name, to take all legal measures which may be proper or necessary for the complete recovery and enjoyment of the assigned premises pursuant to Section 10 of the Policy.

Section 10 of the policy to which the Release and Assignment refers was amended from the original policy of insurance by an endorsement effective January 1, 1983. That section provides that in the event there is no loss in excess of the applicable amount of insurance plus the deductible, "any such recover[y] shall be applied first in reimbursement of the Company and thereafter in reimbursement of the Insured for that part of such loss within such deductible amount."

On February 24, 1984, prior to filing his petition in bankruptcy in this Court, Hutcherson pled guilty to and was convicted of grand larceny in the Circuit Court of Henrico County, Virginia with respect to $147,307.71 of the corporate property of Robertshaw. The parties have stipulated that pursuant to that conviction, the Virginia state court has ordered Hutcherson to make restitution of these funds to Robert-

---

1. 11 U.S.C. § 523(a)(4). Exceptions to discharge.

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

shaw. The parties further stipulated that Hutcherson has made payments pursuant to the state court order.

National Union and Robertshaw timely filed the instant complaint on September 12, 1984 seeking a judgment of nondischargeability with respect to National Union under 11 U.S.C. § 523(a)(4), and with respect to Robertshaw pursuant to 11 U.S.C. § 523(a)(3)[2] and (a)(4). Hutcherson, by counsel, filed several preliminary motions to dismiss for misjoinder of parties and causes of action which the Court by Order entered January 11, 1985, denied. An additional motion to dismiss was filed by Hutcherson on October 29, 1984 seeking dismissal of the claim of National Union. Although the certificate of service attached to the motion to dismiss was not endorsed by counsel for Hutcherson, this defect was not objected to by the plaintiffs. Instead, this motion was taken under advisement by the Court at the pretrial conference on November 7, 1984. Inasmuch as the debtor's grounds of dismissal are identical to the defendant's arguments on the merits of the complaint, the Court has consolidated its decision with respect to the motion to dismiss with the merits of the case. In consideration of the foregoing, the Court renders the following judgment.

## CONCLUSIONS OF LAW

■ Hutcherson has stipulated to and admitted that he embezzled $147,307.71 while employed by the plaintiff, Robertshaw. Robertshaw maintains that the admitted debt is nondischargeable under 11 U.S.C. § 523(a)(3) and (a)(4). Hutcherson stipulates that the debt is nondischargeable as to Robertshaw pursuant to 11 U.S.C. § 523(a)(4) but does not make a similar

stipulation with respect to the § 523(a)(3) allegation. Hutcherson further denies that any of the admitted debt to Robertshaw is nondischargeable as to National Union. The Court finds that Robertshaw's allegation of nondischargeability under § 523(a)(3) must fail because although not listed as a creditor in the debtor's petition, § 523(a)(3)(B) would only allow this Court to find the debt nondischargeable under this subsection if in fact a timely request for a determination of dischargeability under § 523(a)(4) had *not* been made. In this case, the Court finds from the record that the creditor, Robertshaw, has timely filed the complaint herein for dischargeability under § 523(a)(4). Moreover, Robertshaw must have had notice or actual knowledge of the bankruptcy within the meaning of § 523(a)(3)(B) in order to so file. Accordingly, this Court is precluded from finding § 523(a)(3) applicable to the debt admitted to be owed by Hutcherson to Robertshaw. It remains to be determined, however, whether Robertshaw and National Union are entitled to judgment on Hutcherson's admission of both liability and nondischargeability as to Robertshaw on the § 523(a)(4) claim.

■ With respect to the allegations of the plaintiffs under § 523(a)(4), Hutcherson first argues that Robertshaw is not a proper party plaintiff to this action because it assigned all of its rights against Hutcherson to National Union in the Release and Assignment. The crux of Hutcherson's argument is that the assignment divested Robertshaw of any rights against the debtor with respect to any cause of action arising out of the embezzlement. Hutcherson cites no authority for its position other

**2.** 11 U.S.C. § 523(a)(3). Exceptions to discharge.

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection,

timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

than the actual terms of the Release and Assignment.

On the other hand, Robertshaw and National Union assert that Robertshaw is a proper party plaintiff to this action. Robertshaw cites *Traveler's Insurance Company v. Riggs*, 671 F.2d 810 (4th Cir.1982) in support of their position. In *Traveler's*, the District Court for the Eastern District of Virginia considered a case involving Traveler's Insurance Company as the insurer under a homeowner's policy with the Frankensteins. The policy carried a $100 deductible. The Frankensteins had suffered a loss under their policy with Traveler's as a result of a plane crashing into their townhouse. The plane was owned by the other party to the action, Harry Riggs. The suit was filed in the name of the Frankensteins as party plaintiffs. Traveler's had been subrogated under the policy to the Frankenstein's rights against Riggs. The District Court held that Traveler's must be substituted as the real party in interest in the case by virtue of its total subrogation.

On appeal, the Fourth Circuit reversed the District Court holding that where an insured has any uncompensated claim for which it may seek recovery, the insured is a real party in interest in whose sole name an action to recover a loss may be prosecuted. *Traveler's*, 671 F.2d at 813. The Fourth Circuit pointed out that the insureds in *Traveler's* did have an uncompensated claim, *i.e.*, for the uncompensated $100 deductible amount, and were therefore real parties in interest in a suit against the owner of the airplane. The *Traveler's* case is a specific application of the real party in interest rule contained in Federal Rule of Civil Procedure 17(a) which provides in pertinent part that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a).

An additional reason exists to conclude that Robertshaw is a proper party in interest to this action against the debtor. The Court finds that Virginia law is applicable in this case inasmuch as the parties have stipulated that the policy of insurance in question was issued by National Union to Robertshaw in the Commonwealth of Virginia, the filing of a claim by Robertshaw and the payment thereof by National Union occurred in Virginia, and the execution of the Release and Assignment occurred in Virginia. As such, Virginia Code § 38.1–31.2 provides as follows:

When any insurance company makes payment to an assured under any contract of insurance, ... which contract of insurance provides that the company becomes subrogated to the rights of the assured against any other party or parties, such company may enforce, in its own name or in the name of the assured or his personal representative, the legal liability of such other party.

Virginia Code § 38.1–31.2 (Repl.Vol.1981).

The foregoing provision of the Virginia Code is clear in its application. It allows a subrogated insurer to enforce either in its own name or in the name of the assured the legal liability of a third party. In this case, National Union has chosen to sue both in its name and in the name of the assured. Inasmuch as the assured in this case, Robertshaw, has an uncompensated claim for its deductible under the policy with National Union in the amount of $50,000, Robertshaw is a real party in interest which may properly seek enforcement of its claim for the uncompensated deductible.

This conclusion is not changed by the argument of the debtor that the assignment made by Robertshaw to National Union divested Robertshaw of all of its rights arising from the debtor's misappropriation of funds. Hutcherson contends that Robertshaw by execution of the Release and Assignment on April 14, 1984 assigned not only the right of collection but *all* rights with respect to the claim and thus the *Traveler's* case and Virginia Code § 38.1–31.2 are inapplicable. This Court cannot agree. By virtue of Section 10 of the policy of insurance between Robertshaw and National Union, any recovery by National Union and Robertshaw in this case would be applied first in reimbursement of National Union and thereafter in reimburse-

ment of Robertshaw for that part of the loss which Robertshaw suffered as a result of the deductible amount. Robertshaw's Release and Assignment is therefore not as complete or absolute as Hutcherson contends. The policy of insurance clearly contemplates that the insured under the policy does not give up his right to reimbursement from any recoveries made against a third party. The Release and Assignment does not supersede the contract of insurance; rather, the provisions relating to assignment specifically incorporate Section 10 of the contract as agreed to by the parties.

■ The Court concludes that the authorities support a finding here that Robertshaw is a proper party plaintiff in this action. This Court believes the proper interpretation of the assignment and the policy of insurance to be that National Union could, if it chose, choose to enforce the entire cause of action against Hutcherson by suing in its own name. Had National Union done so and recovered the full amount of the complaint, it would have been obligated under Section 10 of the contract of insurance to reimburse Robertshaw for that portion of the loss which it sustained. Robertshaw, therefore, retained an interest in the litigation. However, National Union chose not to file suit solely in its own name but to join Robertshaw as a party plaintiff in this action. Proceeding in this manner was entirely proper under authority of Virginia Code § 38.1–31.2 and the decision of the Fourth Circuit in *Traveler's*. Accordingly, Robertshaw should be entitled to a judgment of nondischargeability inasmuch as Hutcherson has admitted and stipulated to the nondischargeability of this claim pursuant to 11 U.S.C. § 523(a)(4).

Hutcherson's second argument is that the debt which is otherwise nondischargeable as to Robertshaw is dischargeable as to the non-defrauded insurer, National Union. The question is whether a debt arising from the embezzlement of corporate property by an employee and which is nondischargeable as to the corporate employer is nevertheless dischargeable as to the subro-

gated insurer because the insurer, as subrogated third-party assignee, was not a party to the debtor's misconduct. Hutcherson asserts that National Union, by insuring Robertshaw against embezzlement, voluntarily assumed the risk of collecting the embezzled funds from Hutcherson. One of those risks, the debtor contends, is that the embezzler may file a petition in bankruptcy. Hutcherson asserts that bankruptcy is a risk inherent in the collection of the debt and that National Union received a premium to assume this risk. The thrust of the debtor's argument is that nondischargeability of a debt is personal to the party from whom the property was embezzled and the right to assert a dischargeability complaint cannot be maintained by a subrogated insurer who has made payment on a claim. To the contrary, National Union argues that by virtue of the subrogation clause in the policy of insurance, it has stepped into the shoes of Robertshaw to the extent of $97,307.71. National Union contends that the law of subrogation in Virginia allows it to succeed to the rights of Robertshaw, and that those rights include the right to file a complaint for determination of nondischargeability under 11 U.S.C. § 523 in the bankruptcy court.

Hutcherson cites *Ex Parte Taylor*, 23 F.Cas. 727 (E.D.Va.1877) (No. 13,773) for the proposition that the debt herein complained of is dischargeable with respect to National Union as a subrogated third-party assignee of the claim. In *Taylor*, a Virginia Circuit Court entered a decree in 1876 finding for William H. and Mary E. Walters, infants, for $4,500 against their guardian and the latter's sureties. One of the sureties was Taylor. Taylor filed a petition in bankruptcy which gave rise to an attachment for arrest to compel him to answer interrogatories. An application to the state court for habeas corpus was refused, but a similar application to federal court resulted in a hearing being granted. The federal district court [formerly the "circuit" court] was required to decide whether it had jurisdiction to grant the bankrupt's request for relief from what the

court had previously decided in its opinion was an illegal attachment proceeding.

The district court in *Taylor* found that § 5117 of the bankruptcy law as it then existed provided that debts created while acting in a "fiduciary character" were not dischargeable. The court found that the law applied only to the fiduciary himself and not to his sureties. *Id.* at 728. Inasmuch as Taylor was only the surety and not himself in a fiduciary relation to the infant plaintiffs in the state suit, Taylor's obligation as surety was dischargeable in bankruptcy although the guardian's obligation was not. Consequently, no debt was owed by Taylor upon discharge and the arrest was, therefore, improper since the bankruptcy law in 1877 only allowed for arrests during the pendency of the bankruptcy petition if the arrests were founded on a nondischargeable debt. *Id.*

The holding in *Taylor* does not support the debtor's position that the instant debt is dischargeable as to National Union. In *Taylor*, the reason for the debt being nondischargeable as to the surety was the character of the debt itself—it arose out of a fiduciary relation with respect to the guardian, but not as to the surety, who was bound only by contract. Thus, when the surety filed bankruptcy, it was held to be dischargeable. Here, it is not National Union in bankruptcy seeking as surety to discharge a debt owed to Robertshaw. Nor does Robertshaw stand in a fiduciary relation to Hutcherson. Accordingly, the *Taylor* case is inapposite to the case at bar and cannot support a finding by this Court that Hutcherson's debt to National Union which it listed in its petition is dischargeable.

Counsel for National Union and Robertshaw cite *Federal Land Bank v. Joynes*, 179 Va. 394, 18 S.E.2d 917 (1942) in support of their contention that National Union is a proper party plaintiff to maintain a complaint pursuant to 11 U.S.C. § 523 against the debtor. In *Joynes*, the Virginia Supreme Court decided a case in which two junior mortgagees had advanced money to satisfy a senior mortgage on certain property with the intent that the junior mortgagees would then have a first lien on the property. Through the junior mortgagees' own negligence they failed to acquire a first lien. The Supreme Court found that the senior mortgage would be kept intact and allow the junior mortgagees to be subrogated to the rights of the senior mortgage. In so finding, the Court discussed in general the doctrine of subrogation in Virginia.

■ This Court finds that Virginia follows the generally accepted view of subrogation that the subrogee steps into the shoes of the insured and is both entitled to assert the rights of the insured and is bound by any defenses valid against the insured. In 18 Michie's Jurisprudence, *Subrogation* § 29 (Repl.Vol.1985), it is stated that "[a] clause providing for subrogation in an insurance policy simply places the insurer, so far as the right of subrogation is concerned, against the debtor or alleged tort-feaser, in the place of the insured. If the insured has no cause of action, then the insurer has none." *Id.* at 36. National Union's right to subrogation arose by contract when it made payment under the policy of insurance to Robertshaw in the amount of $97,307.71. Although the specific facts found in *Joynes* are not helpful in resolving the issue before the Court, the Virginia Supreme Court's discussion of the concept of subrogation as being "the substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt" is relevant to this Court's determination of the case at bar. *Joynes*, 179 Va. at 402, 18 S.E.2d at 920 (1942).

■ It is clear to this Court that National Union and Robertshaw freely entered into a contract of insurance providing for subrogation and that this provision is enforceable in Virginia. See *Collins v. Blue Cross of Virginia and Blue Shield of Virginia*, 213 Va. 540, 544, 193 S.E.2d 782 (1973). The right to subrogation has arisen by virtue of National Union's payment to Robertshaw on its claim of $97,307.71. As subrogee to the creditor, Robertshaw, National Union is substituted to the rights of

Robertshaw to whom it succeeds in relation to the debt. *Joynes*, 179 Va. at 402, 18 S.E.2d at 920. Nothing in the Bankruptcy Code would prevent National Union, as subrogee, from filing a proof of claim or asserting a nondischargeability complaint in this case. Moreover, the case law supports the standing of a subrogee to bring a complaint to determine the dischargeability of a debt to the same extent as the assured. See *In re Morris*, 31 B.R. 474, 478 (Bankr.N.D.Ill.1983); *In re Graziano*, 35 B.R. 589 (Bankr.E.D.N.Y.1983); *In re Shinew*, 33 B.R. 588 (Bankr.N.D.Ohio 1983). Finally, Virginia Code § 38.1–31.2 specifically confers on an insurance company who becomes subrogated to the rights of the assured under a contract of insurance to enforce in its own name the legal liability of a third party. *Va.Code* § 38.1–31.2 (Repl.Vol.1981). Accordingly, National Union is privileged to file a complaint to determine the dischargeability of a debt the rights to which it has become subrogated under a policy of insurance.

The extent of the subrogation is to be determined by the contract of insurance between the parties. In this case, pursuant to the contract of insurance, Robertshaw made an assignment of its claim to National Union for purposes of collection. Pursuant to Section 10 of the contract, Robertshaw was entitled to receive from the proceeds of any recovery by National Union a reimbursement to the extent of its deductible amount after National Union had been reimbursed for the amount it paid to Robertshaw under the policy. National Union chose to bring suit in both its own name and the name of the insured. As both parties with the loss are before the Court, each should recover a judgment to the extent it suffered a loss.

In this case, Hutcherson's motion to dismiss should be denied and judgment should be entered in favor of Robertshaw in the amount of $50,000 as the amount of its deductible under the policy of insurance, and National Union should be granted judgment in the amount of $97,307.71. These sums are nondischargeable as to both Robertshaw and National Union by virtue of (1) the debtor's admission of nondischargeability in the stipulations of fact with respect to Robertshaw, and (2) this Court's finding that National Union succeeds to those rights, including the benefit of the debtor's admission of nondischargeability, in relation to this debt.

An appropriate Order will issue.